Filed 3/30/21  Hynes v. Smith CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| JOEY GERALDINE HYNES, | B302998 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC708333) |
| v. | |
| MARILYN SMITH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Susan Bryant-Deason, Judge.  Affirmed.

Reif Law Group, Brandon S. Reif, Marc S. Ehrlich and Ohia A. Amadi for Defendant and Appellant.

James V. Mellein for Plaintiff and Respondent.

———————————————

Defendant and appellant Marilyn Smith brought an anti-SLAPP motion (Code Civ. Proc., § 425.16) against a malicious prosecution cause of action in the third amended complaint of plaintiff and respondent Joey B. Hynes.[1]  The trial court denied the motion as untimely, finding it could have been brought against Hynes's second amended complaint, which had effectively pleaded the malicious prosecution cause of action.  We agree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The anti-SLAPP motion at issue was filed in what began as an attorney malpractice action.  Hynes brought suit against her former attorney, Smith, alleging negligence in her handling of a wrongful death action and her intentional and malicious withholding of settlement funds.  As our only concern in this appeal is the timeliness of Smith's anti-SLAPP motion as directed to Hynes's later cause of action for malicious prosecution, we limit our factual discussion accordingly.  We start with events and litigation that preceded the malpractice lawsuit.

1.  ***The Representation Results in a Settlement***

Hynes was appointed administrator of the estate of her deceased brother.  As administrator, she considered bringing suit for wrongful death against various doctors and entities involved in his care.  Hynes retained Smith for this purpose.  Smith filed the lawsuit and was partially successful, obtaining a settlement from several defendants amounting to $330,000, but not successful against other defendants.  The settlement proceeds were placed in Smith's client trust account.

---

[1]  All further undesignated statutory references are to the Code of Civil Procedure.

2

Hynes and Smith disputed the amount of fees to which Smith was entitled from the settlement.

**2.    *The Fee Arbitration***

The fee dispute proceeded to voluntary arbitration with the Los Angeles County Bar Association.

On March 1, 2018, the arbitration panel issued its nonbinding award as follows: "The Law Offices of Marilyn M. Smith is entitled to $42,031.96 out of the $330,000.00 held in the attorney-client trust account. The remainder of $287,968.04 should be promptly remitted to Joey H[y]nes."

Neither Smith nor Hynes requested a trial de novo. The award therefore became final after 30 days. (Bus. & Prof. Code, § 6203, subd. (b).) Smith did not, however, promptly remit the $287,968.04 to Hynes.

**3.    *The Confirmation Action and Interpleader***

Instead of transmitting the money to Hynes, Smith brought two lawsuits that tied up the funds for approximately an additional year – depriving Hynes of reimbursement for substantial amounts she had expended in funding the litigation, and costing her additional expenses.[2] These cases would later form the basis of Hynes's malicious prosecution cause of action against Smith.

**A.    *The Confirmation Action***

On April 6, 2018, attorney Smith filed suit against Hynes to confirm the arbitration award ("Confirmation Action"). In her form complaint, she identified the amount in dispute as "$42,031" – i.e., the amount the arbitrators had said she was entitled to

---

[2]    Hynes said she had taken out a home equity line of credit in order to fund the wrongful death action. She was continuing to incur interest expenses of $1,000 per month.

retain. She did not reference the amount the arbitrators awarded to Hynes. In addition to seeking a judgment in her favor in that amount, Smith sought interest, costs, and attorney fees. Hynes answered the petition, agreeing that Smith be granted her $42,031.96 share of the arbitration award, but denying that Smith was entitled to any interest, costs or fees.

**B.**     *The Interpleader*

On April 12, 2018, about a week after filing the Confirmation Action, Smith filed a complaint in Interpleader, depositing the entire $330,000 into the court ("Interpleader"). She asserted that she was entitled to her $42,031.96 out of the fund, but that Hynes "disputes that [Smith] is entitled to any portion" of the money. She also identified as defendants the three heirs of Hynes's brother, asserting that since Hynes pursued the underlying action as administrator of his estate, the heirs had an interest in the funds. She alleged she could not distribute the funds to Hynes – the administrator – without an order from the Probate Court. Finally, she also alleged that Medicare claimed a lien on the settlement funds, although she did not name Medicare as a defendant in the Interpleader.

Smith sought release of the $42,031.96, plus interest, costs and fees.

As she did in the Confirmation Action, Hynes responded that Smith should receive the $42,031.96 ordered by the arbitrators, but without interest, costs or fees.

**C.**     *Ultimate Resolution of the Confirmation Action and Interpleader*

The Confirmation Action and the Interpleader would not resolve for a year – overlapping with the current litigation. Ultimately, on December 14, 2018, Hynes obtained from the

Probate Court an order to release the interpleaded funds as follows: $42,031.96 to Smith and $287,968.04 to Hynes as administrator of the estate. Any interest accrued on the funds was to be divided proportionately. Once the funds were delivered to Hynes as administrator, she was to distribute $208,244.08 to herself as reimbursement for costs and fees she had advanced in the wrongful death action. She was to pay $15,000 to each of the three heirs, and could hold the remainder in her administrator's account for the payment of future costs (e.g., Medicare) which may be incurred. Hynes received the funds.

On April 23, 2019, more than a year after it was filed, the Confirmation Action was dismissed without prejudice at Smith's request.[3]

On May 31, 2019, the Interpleader was also dismissed without prejudice.

### 4.    *Hynes's Complaint in This Action*

On May 31, 2018 – shortly after Smith filed the Confirmation Action and Interpleader – Hynes, representing herself, brought the present lawsuit against Smith, alleging legal malpractice.[4] Hynes's complaint went through several iterations and was challenged multiple times. To reiterate, our concern is only her malicious prosecution claim.

---

[3]    Smith represents that this dismissal was the result of an agreement; Hynes disagrees. We need to not resolve the dispute.

[4]    Hynes alleged that she was 86 years old. Because of her age, this action is entitled to preference. (§ 36.)

5

**5.**     *Hynes's First Amended Complaint Alleges Abuse of Process*

Pursuant to stipulation, on October 16, 2018, Hynes filed her first amended complaint. This complaint re-alleged her original cause of action for malpractice and added a claim for abuse of process. Hynes alleged that Smith's filing of the Confirmation Action and the Interpleader constituted abuse of process. She alleged that, in both cases, Smith misrepresented the existence of a dispute regarding the allocation of the settlement funds, when no dispute existed. Hynes alleged that Smith abused the process of the courts by bringing these actions in order to prevent Hynes from receiving the funds to which she was entitled, in retaliation for Hynes's success at the fee arbitration.

**6.**     *The Trial Court Characterizes the Abuse of Process Cause of Action as One for Malicious Prosecution*

On January 23, 2019, Smith moved for judgment on the pleadings. She argued, among other things, that the abuse of process cause of action was barred by the litigation privilege. (Civ. Code, § 47, subd. (b).)

The motion was heard on February 20, 2019. The trial court, in ruling on the motion for judgment on the pleadings, concluded that, while the litigation privilege applies to abuse of process, Hynes's "allegations sound in malicious prosecution, which is not barred by the litigation privilege. [Citation.]" The court, on its own motion, took judicial notice of the docket in the Interpleader, which indicated the action was still pending. The court recognized that, with the Interpleader still pending, Hynes could not allege favorable termination, a necessary element in a

6

malicious prosecution claim. The court granted judgment on the pleadings with 10 days leave to amend this cause of action.

**7.      *Hynes's Second Amended Complaint***

On March 4, 2019, Hynes filed her second amended complaint. As neither the Confirmation Action nor the Interpleader had been resolved, Hynes again titled her cause of action "abuse of process."

**8.      *Smith Moves for Summary Judgment Construing the Second Amended Complaint as Pleading Malicious Prosecution***

On March 6, 2019 – two days after Hynes filed her second amended complaint – Smith moved for summary judgment. As to the abuse of process cause of action, Smith again argued it was barred by the litigation privilege. However, she included, under a separate heading of her motion, an alternative argument that Smith "cannot prevail even if her 'Abuse of Process' cause of action is construed as sounding in Malicious Prosecution." (Capitalization omitted.) This argument was specifically directed to the tort of malicious prosecution; Smith argued that a party cannot be liable in malicious prosecution for naming someone as a claimant in interpleader.

**9.      *Hynes Moves for Leave to File a Third Amended Complaint to Rename Her Abuse of Process Cause of Action as One for Malicious Prosecution***

On March 25, 2019 – prior to opposing Smith's summary judgment motion – Hynes, still self-represented, moved for leave to file a third amended complaint, in which she changed the name of her abuse of process cause of action to malicious prosecution. As she explained in her motion, "Here plaintiff has filed an amended complaint which is essence the same as the

prior amended complaint, except for the fact that the Third Cause of Action, lies in Malicious Prosecution instead of Abuse of Process."[5]

---

[5] Hynes also made several relatively minor changes to her allegations, primarily to the legal differences in the elements of the two causes of action. The essential factual allegations of the malicious prosecution cause of action in the third amended complaint were the same as the factual allegations in the abuse of process cause of action in the second amended complaint. We have compared the second amended complaint with the proposed third amended complaint. One of the changed paragraphs is as follows – with omissions noted in strikethrough and additions in italics: "~~Defendant, and each of them, had an ulterior motive to Interplead the settlement funds so as to prevent Plaintiff from obtaining the funds that were Awarded to her as Administrator of the Estate~~. Defendant, and each of them, used the courts to obtain an unlawful seizure of the settlement funds. As a direct result of the improper seizure of the settlement funds, Plaintiff *suffered financial loss* and ~~emotional~~ distress. Defendant, and each of them, as a ~~direct~~ result of their breach of duty of care, has caused her physical *and emotional* stress and a autoimmune disease, brought on by stress. Defendant Interpleaded the Award and forced Plaintiff to plead for her legal right to the funds in three different courts, causing Plaintiff to return to the courts numerous times, ~~causing Plaintiff financial and emotional harm~~. *Plaintiff prevailed in each court and was able to open up a trust account, for the heirs, as Administrator of the Estate.*"

We observe that, while Hynes alleged in her proposed third amended complaint that she had "prevailed in each court," she was apparently referring to having prevailed on interim rulings; neither the Confirmation Action nor the Interpleader had been dismissed at the time.

8

**10.** *Smith Moves to Strike the Second Amendment Complaint*

On April 9, 2019 – while Smith's motion for summary judgment and Hynes's motion for leave to file a third amended complaint were both pending – Smith filed a separate motion to strike Hynes's second amended complaint.[6] As she did in her summary judgment motion, Smith treated the "Abuse of Process" cause of action in Hynes's second amended complaint as a cause of action for malicious prosecution, stating: "In the [order granting judgment on the pleadings], the Court dismissed Plaintiff's Third Cause of Action for abuse of process, but which the Court found 'sounds in malicious prosecution.' [Citation.] As the Court opined, an essential element of malicious prosecution is termination in the Plaintiff's favor. [Citation.] Taking sua sponte judicial notice that the proceeding in Defendants' interpleader action was not terminated the court held as a matter of law that while the '[Interpleader] is still pending, Plaintiff cannot allege termination in her favor, which is necessary to overcome the litigation privilege.' [Citation.] Plaintiff's [second amended complaint] does not allege termination in her favor, nor can she because the Interpleader Action [citation] is still ongoing. [Citation.]" This single paragraph was the entirety of Smith's motion to strike Hynes's third cause of action; at no point did she argue that the cause of action was one for abuse of process.

The trial court ultimately denied the motion to strike the cause of action.

---

[6] The motion was brought pursuant to section 436, subdivision (b), which allows a court to strike any pleading "not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." It was not an anti-SLAPP motion.

## 11. *The Trial Court Continues the Motion for Leave to File the Third Amended Complaint and Denies Summary Judgment*

On May 16, 2019, the court held a hearing on Hynes's motion for leave to file the third amended complaint. Concluding that Hynes had failed to comply with the applicable rule of court in her motion for leave, the trial court continued the hearing to allow Hynes to perfect her motion. (Cal. Rules of Court, rule 3.1324(b).)

The court then, on its own motion, advanced the hearing on Smith's summary judgment motion, and denied it. The court believed the motion was premature, as a summary judgment motion must be directed toward the pleadings, and the pleadings had not yet been finalized. The court chastened Smith's counsel for the speed with which they had sought summary judgment, stating, "I think filing a motion for summary judgment two days after somebody has filed an amended complaint is almost on the verge of unbelievable and outrageous."

## 12. *The Third Amended Complaint is Filed*

After additional briefing and a hearing, the court granted Hynes's motion for leave to file her third amended complaint. The court explained, "It didn't seem to me that [the third amended complaint] added any new facts or theories. All it did is clean up the mess that Ms. Hynes had made in her pleadings."[7]

---

[7] Smith's counsel "mostly agree[d]" with this assessment, although he indicated that Hynes had added some additional facts "especially to her first cause of action for professional malpractice."

The third amended complaint was filed on July 12, 2019, by which time the Confirmation Action and Interpleader had been dismissed.  Smith answered the complaint.

**13.   *Smith's Anti-SLAPP Motion***

On September 16, 2019, nearly a year after Hynes filed her first amended complaint, Smith brought her anti-SLAPP motion challenging the malicious prosecution cause of action.[8]

Hynes, now represented by counsel, filed an opposition on the merits.  Smith filed a reply.  Hynes filed a declaration in opposition to the reply.

**14.   *Hynes's Supplemental Opposition on Untimeliness***

On October 24, 2019, Hynes's counsel filed a supplemental opposition, arguing the anti-SLAPP motion was untimely.  Specifically, Hynes argued that her cause of action for malicious prosecution had been pleaded in her prior complaints, and should have been challenged by anti-SLAPP, if at all, when those complaints were filed.

When Hynes's counsel filed the supplemental opposition, he suggested there would be no prejudice to Smith if the court allowed the filing of the opposition because the court could continue the hearing at Smith's request.

**15.   *The Trial Court Denies the Anti-SLAPP Motion as Untimely***

At the October 25, 2019 hearing on the anti-SLAPP motion, the trial court read its tentative order, denying the motion as untimely.  Smith did not suggest the trial court should not have considered the untimeliness argument, nor did she request a

---

[8]     Smith's anti-SLAPP motion addressed individual factual allegations in other causes of action as well.  On appeal, she limits her argument to the malicious prosecution claim.

11

continuance to prepare a reply to it. After a brief argument, the court adopted its tentative. Smith filed a timely notice of appeal.

### DISCUSSION

We begin our analysis with a brief review of the anti-SLAPP law, codified in section 425.16. "Section 425.16 'provides a procedure for weeding out, at an early stage, *meritless* claims arising from protected activity.' [Citation.] 'The Legislature enacted section 425.16 to prevent and deter "lawsuits [referred to as SLAPPs] brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." [Citation.] Because these meritless lawsuits seek to deplete "the defendant's energy" and drain "his or her resources" [citation], the Legislature sought " 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target' " [citation]. Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation. [Citation.] In doing so, section 425.16 seeks to limit the costs of defending against such a lawsuit.' [Citation.]" (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4 Cal.5th 637, 642 (*Newport*).)

### 1.    *The Anti-SLAPP Motion Was Untimely*

An anti-SLAPP motion must be filed within 60 days of service of the complaint, or later within the court's discretion. (§ 425.16, subd. (f).) We review de novo the trial court's determination that an anti-SLAPP motion was untimely. (*Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 208 (*Starview*).)

The parties agree that *Newport* and *Starview* govern the issue of the timeliness of an anti-SLAPP motion with respect to

an amended complaint. The dispute in *Newport* arose from a ground sublease of real property. The plaintiffs alleged that the defendants "fraudulently settled an unlawful detainer action involving the property." (*Newport, supra*, 4 Cal.5th at p. 640.) Their first complaint alleged multiple causes of action including breach of contract and breach of the implied covenant of good faith. Eventually, plaintiffs filed a third amended complaint which re-alleged the previously-pleaded causes of action and added, for the first time, causes of action for quantum meruit and promissory estoppel. The defendants filed an anti-SLAPP motion directed to the third amended complaint. Plaintiffs argued the anti-SLAPP was untimely because it had not been brought against any earlier complaint, and the trial court agreed. (*Ibid.*) On appeal, the Court of Appeal concluded the anti-SLAPP motion was, in fact, timely as to the two causes of action pleaded for the first time in the third amended complaint (although it affirmed the denial of the anti-SLAPP motion on the merits, as it concluded plaintiffs had established a probability of prevailing). (*Id.* at p. 641.)

Our Supreme Court affirmed, specifically agreeing with the Court of Appeal's interpretation of section 425.16's timeliness requirements. (*Newport, supra*, 4 Cal.5th at p. 646.) It held that "a defendant must move to strike a cause of action within 60 days of service of the earliest complaint that contains that cause of action." (*Id.* at p. 640.) Specifically, an anti-SLAPP motion may be brought following an amended complaint "as to new claims not previously made." (*Id.* at p. 643.) As the court explained, "In this case, as the trial court noted when it exercised its discretion to deny a late filing, much litigation, including discovery, had already been conducted for two years before the anti-SLAPP

13

motion brought it to a halt.  It is far too late for the anti-SLAPP statute to fulfill its purpose of resolving the case promptly and inexpensively.  'An anti-SLAPP motion is not a vehicle for a defendant to obtain a dismissal of claims in the middle of litigation; it is a procedural device to prevent costly, unmeritorious litigation at the initiation of the lawsuit.' [Citation.]  To minimize this problem, section 425.16, subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion).  This interpretation maximizes the possibility the anti-SLAPP statute will fulfill its purpose while reducing the potential for abuse." (*Id.* at p. 645.)

In *Starview*, the Court of Appeal considered the application of *Newport* to a case where, although the cause of action alleged in the amended complaint was new, the protected activity allegedly underlying it had been pleaded in a prior complaint. The parties owned neighboring properties.  Starview had an easement over the Lees' driveway, and needed the Lees to sign a covenant in order for the City to approve Starview's remodeling plans.  When the Lees declined to sign without further monetary and other consideration, Starview sued, alleging causes of action for breach of contract, specific performance, and injunctive relief. (*Starview, supra,* 41 Cal.App.5th at p. 207.)  Over a year later, following discovery and motions for summary judgment/ adjudication, Starview filed a first amended complaint, re-alleging the causes of action for breach of contract and injunctive relief, but adding claims for breach of the implied covenant of good faith, negligent and intentional interference with easement

14

and private nuisance.  The newly added claims were based on the Lees' failure to sign the covenant and on their extra-contractual demands – the same essential allegations that were in the causes of action originally pleaded.  (*Ibid.*)  The trial court denied the Lees' anti-SLAPP motion as untimely, on the basis that it could have been directed to the initial complaint, because the new claims were based on facts alleged in that complaint.  (*Id.* at p. 209.)  The Court of Appeal disagreed:  "By its terms, the anti-SLAPP statute is directed at striking *causes of action*, not merely factual allegations.  [Citations.]  That is why causes of action under the anti-SLAPP statute have been defined as '*claims for relief* that are based on allegations of protected activity.' [Citation.]  Here, Starview may have asserted the alleged protected activity in the original complaint, but it did not assert the challenged 'claims for relief' until the [first amended complaint].  The Lees could not have brought a motion to strike *those claims* from the original complaint because they did not exist to be stricken."  (*Id.* at p. 209.)

Smith argues that, under the authority of *Newport* and *Starview*, we must reverse.  She takes the position that the malicious prosecution cause of action, properly identified, appeared for the first time in Hynes's third amended complaint, and was therefore subject to an anti-SLAPP motion, even though it was based on factual allegations that appeared in Hynes's abuse of process cause of action in her first and second amended complaints.

15

We reject Smith's argument.[9]  On the unique facts of this case, the cause of action pleaded in Hynes's second amended complaint *was* malicious prosecution, and Smith knew it.  And the trial court knew it.  The cause of action, as it appeared in the first amended complaint, was denominated "abuse of process."  But in ruling on Smith's motion for judgment on the pleadings on the first amended complaint, the trial court found that Hynes's "allegations sound in malicious prosecution."

In her second amended complaint, when Hynes re-alleged her cause of action as abuse of process, Smith challenged it *as a malicious prosecution claim*.  Her summary judgment motion treated the cause of action as pleading abuse of process or malicious prosecution; her motion to strike construed it as only pleading malicious prosecution.  As our Supreme Court explained in *Newport*, the law should be interpreted to allow "an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier."  (*Newport, supra*, 4 Cal.5th at p. 645.)  The trial court, Smith, and Hynes all understood the second amended complaint's "abuse of process" cause of action was really one for malicious prosecution.  The cause of action challenged the initiation of the Confirmation Action and the Interpleader, not that other forms of process had been misused.  Smith has offered no explanation for why she was able to challenge that cause of

---

[9]    Because we conclude the anti-SLAPP motion was untimely under the rule established by *Newport* and discussed in *Starview*, we need not decide whether we agree with *Starview*'s implementation of *Newport*, or *Starview*'s application of anti-SLAPP law following *Baral v. Schnitt* (2016) 1 Cal.5th 376.

action as malicious prosecution via a motion for summary judgment and a traditional motion to strike, but could not have done so by an anti-SLAPP motion.[10]  Given that Smith in two motions characterized the cause of action in Hynes's second amended complaint as one for malicious prosecution, she may not now assert that Hynes did not, in fact, plead malicious prosecution.[11]  The anti-SLAPP motion directed to the third amended complaint was therefore untimely.

---

[10]    At oral argument on appeal, Smith suggested that she could not have challenged the third cause of action as a malicious prosecution action until the third amended complaint – as this was the first complaint Hynes filed after the Confirmation Action and Interpleader had terminated.  This contention rings hollow given that, in Smith's motion to strike the second amended complaint, she specifically argued that the third cause of action did not validly state a claim for malicious prosecution because the Interpleader had not yet terminated.  Not only was Smith able to challenge the cause of action as one for malicious prosecution; she raised the substantive argument that the cause of action was not yet ripe.

[11]    Smith argues, in her reply brief, "According to Hynes, Smith should have discerned that Hynes, despite alleging abuse of process [in the first amended complaint] and [second amended complaint], and despite failing to allege all the elements of malicious prosecution in the [third amended complaint], and despite the fact that there had been no final disposition conclusion of the Interpleader Action at that time, was actually alleging (or trying to allege) a cause of action for malicious prosecution that would have been subject to an Anti-SLAPP motion."  Smith had no difficulty discerning exactly this, when she filed her motion for summary judgment and motion to strike the second amended complaint.

**2.** ***The Court Did Not Abuse Its Discretion in Addressing the Untimeliness Issue***

Smith argues the trial court abused its discretion in considering Hynes's supplemental opposition, which first raised the argument that the anti-SLAPP motion was untimely, on the basis that the supplemental opposition was itself untimely.[12] First, we observe that it is not certain that the trial court considered the supplemental opposition. It may very well be that the trial court identified the timeliness issue on its own. Smith argues that any suggestion the court reached the issue on its own "defies credulity" because the court "relied exclusively on the only two cases cited in the Supplemental Opposition – *Newport Harbor* and *Starview . . . .*" This is untrue. The supplemental opposition had cited *Newport*, but not *Starview*; the trial court's own research apparently found *Starview*. Second, *Starview* was filed on October 17, 2019, several days *after* Hynes filed her initial opposition, providing a justification (albeit unaddressed by the parties) for the trial court to consider the issue even though it was raised late. Third, this is a pure issue of law on undisputed facts. We could address it for the first time on appeal (see *Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 129–130) and there is no reason the trial court could not similarly consider it. We find no abuse of discretion in the trial court's decision to accept the late-filed papers.

---

[12] Smith similarly argues the trial court erred in considering Hynes's supplemental declaration. As the declaration discussed only whether Hynes's third amended complaint was properly verified, it is not directly related to the court's denial of the anti-SLAPP motion – the only ruling before us on appeal.

18

In a related contention, Smith argues that the court "did not consider continuing the hearing so that Smith could prepare a reply to the Supplemental Opposition. [Citation.]" As we have discussed, Hynes's counsel indicated in its supplemental opposition that Hynes was amenable to a continuance to eliminate any possible prejudice if Smith requested one, but Smith never did. It is too late for Smith to now assert the trial court should have granted a continuance that Smith did not request.

## *DISPOSITION*

The order denying the anti-SLAPP motion as untimely is affirmed. Smith is to pay Hynes's costs on appeal.


RUBIN, P.J.


BAKER, J.


KIM, J.


19